[Civ. No. 3901. Second Appellate District, Division One.—May 4, 1922.]

VOLENE TEGNER HOPKINS, Appellant, v. PALO VERDE MUTUAL WATER COMPANY (a Corporation), Respondent.

[1] WATER CORPORATION—ACTION BY STOCKHOLDER OF MUTUAL WATER COMPANY—DAMAGES FOR REFUSAL TO FURNISH WATER — FINDING —EVIDENCE.—In this action against a mutual water company to recover damages for an alleged refusal to furnish water, the

---

What constitutes excuse for failure of irrigation company to supply water in accordance with contract, note, **Ann. Cas. 1912C, 1031.**

finding that the failure to receive the water was due to plaintiff's omission to make proper application therefor is sustained by the evidence, even though it be assumed that such a company has not the right to deprive a stockholder of water because only of default in the payment of interest on the purchase price of the stock.

APPEAL from a judgment of the Superior Court of Riverside County. George H. Cabaniss, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Chapin & Taylor, D. B. Chapin, Lee R. Taylor and Jas. L. King for Appellant.

I. W. Stewart and Arvin B. Shaw, Jr., for Respondent.

JAMES, J.—Plaintiff brought this action to recover damages for the alleged refusal of the defendant to furnish water with which to irrigate certain arid land owned by her. Judgment was in favor of the defendant. Plaintiff has appealed.

Prior to December, 1918, plaintiff became possessed of considerable acreage of land in Riverside County, which was contiguous to the canal of the defendant corporation. The latter was a mutual water company and plaintiff, desiring to become a member thereof in order to obtain water, arranged for the purchase of 145 shares of defendant's stock. The price of this stock exceeded the sum of $5,000. Plaintiff, at the time of the purchase, paid no money on account, but gave her notes which were payable with interest and gave a mortgage on her land to secure the payment thereof. She also, under the requirement of the company, deposited the stock with the latter as collateral. By January, 1919, she owed the defendant the sum of $550.66, that being the amount of three overdue semi-annual installments of interest on the water stock account. At that time her land was encumbered with three liens: first, a trust deed securing the payment of $7,500; second, a mortgage securing the purchase price of the water stock, and, third, a trust deed securing an apparent loan of $15,000 made in favor of a Riverside bank. At the end of the year

1918 the Riverside bank was pressing the plaintiff for payment of the amount due it. She had defaulted in the matter of the payment of at least one assessment regularly levied for maintenance purposes by the defendant water company prior to that time. This assessment the bank had paid in order to protect its security. Plaintiff anticipated a probable foreclosure by the bank and in December, 1918, removed a pumping plant from the land and placed it on adjoining property. At the time she did this she told persons with whom she had conversations that she wanted to save the pumping plant and not allow the bank to sell it with the land. She admitted at the trial that the reason given for removing the plant was as stated, but also stated that it was removed because it needed a new foundation. So far as appears, the new foundation was never built, and it did appear in evidence that neither the pump, nor any of its accessories, was ever replaced in its original location. She testified that some time in February a suit was brought on her behalf enjoining the bank from proceeding with foreclosure or sale of the property and that she was advised by her attorney that that suit would secure to her possession of the land for at least another year. Meanwhile there were no crops planted or growing upon the land except twenty acres of alfalfa; none other were grown or planted at any time prior to the commencement of this action or the trial thereof.

On January 21, 1919, the auditor of the defendant sent to the plaintiff a letter calling plaintiff's attention to the fact that interest money was overdue on the water stock account and stating: ''As your account is over six months in arrears, the Board of Directors have instructed us to shut off the water and make no more deliveries until this interest account is settled. This action will not be taken if payment is received by us on or before the 27th of January.'' It was the claim of the plaintiff that because of this action of the company she was deprived of the use of her land; that her alfalfa crop failed for want of water; all to her damage in a sum in excess of $11,000, for the recovery of which she brought this suit during the latter part of April, 1919. She testified that upon several occasions, prior to the 1st of April, she called at the office of the defendant and inquired whether she · could have water, and

was informed that it would not be delivered to her because of the nonpayment of interest. About April 1st she appeared before the board of directors meeting at the office of the company and made request that water be furnished her. Several of the directors testified that she was told at that time that her crops would not be allowed to suffer. There was testimony that she said at that time that she wanted water for her alfalfa but that she might not want it for two or three weeks; that she went away apparently satisfied. Under established valid regulations of the defendant company, stockholders desiring water were required to file written application therefor, stating the time when they desired the water delivered. The defendant then had the option (under its rules) to furnish the water on the precise day stated or one day in advance thereof, or one day after. The plaintiff had at numerous times prior to the year 1919 received water which was always delivered to her after the filing of the written order, and she was very familiar with the requirement that the request should be so expressed in writing, and upon blanks provided for that purpose.

[1] The main contention of appellant is that notification given her on January 21, 1919, that water would not be furnished until the overdue interest amounts had been paid, was never revoked and that there was a continued refusal on the part of the defendant to supply her with water up to the time she brought this action. She contends that the refusal was unjustified and argues that her right to have water furnished her under her stock ownership could not be made conditional upon payment of interest due on account of the purchase price of the stock. The trial court found in effect that the defendant did withdraw the notification of January 21st at the directors' meeting of about April 1st, when the plaintiff appeared at the meeting. The court further found that the land of plaintiff was adapted to the growing of cotton and that at the time of the meeting of the board of directors there remained a period of seventy-five days before the end of the cotton planting season, which was an adequate period of time within which plaintiff might have prepared her land, irrigated it and planted the crop. Without deciding the question, it may be assumed that the defendant did not

have the right to deprive a stockholder of water because only of default made in the matter of the payment of interest on the purchase price of water stock. Even allowing that assumption, the findings of the trial judge are plainly sustainable upon the evidence. First, there was a great deal of testimony to the point that the plaintiff was clearly informed by the president and others of the directors about April 1, 1919, that she could have whatever water was necessary to meet her needs. She knew well the requirement that she should present a written order for the water, but she made no such order. She chose, rather, shortly after the date last referred to, to bring this action for damages. There was testimony, as has been hereinbefore stated, that she announced at the time she met the directors that her alfalfa did not need the water then. One witness testified that she there said: "My alfalfa is all right yet, but I don't know how long it will be so." This testimony negatives any idea that the loss of or damage to the alfalfa crop, which was the only crop grown up to that time in that year, was due to any failure of the defendant to furnish water from January 21st to the April date. It was shown that the crop to which the land was best adapted for that year was cotton, and plaintiff's testimony as to the rental value of the land was generally based upon its assumed use for the purpose of growing that crop. No preparation had been made to receive water in 1919, although plaintiff testified that she had made "plans" for the ditching of the ground. All the circumstances indicated very strongly, however, that, because of threatened foreclosure proceedings, plaintiff had not anticipated going to the expense of producing any crop other than the alfalfa already planted, during the year 1919.

This suit bears strongly the color of a speculative attempt to reap damages where none could justly be claimed. It seems unnecessary to review authorities cited in the briefs of either counsel. The main question is one of fact, as to the determination of which the decision of the trial court, made upon substantial evidence, is unassailable.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.